IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESSE McKINNON

      v.                        :   Civil Action No. 12-1265

REBECCA M. BLANK

:
:
:
:

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion for summary judgment filed by Defendant Rebecca M. Blank in her official capacity as Acting Secretary of the United States Department of Commerce. (ECF No. 8).[1]  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. Because there is no genuine issue of material fact based on the present record, and because there is no reasonable basis for concluding that the discovery requested by Plaintiff would reveal a triable issue of fact, the motion will be granted.

**I.  Background**

    **A.  Factual Background**

Except as noted, the following facts are undisputed. Plaintiff Jesse McKinnon was born in 1962.  Plaintiff holds

---

[1] Pursuant to Fed.R.Civ.P. 25(d), Rebecca M. Blank, the current Acting Secretary of Commerce, has been substituted for former Secretary John E. Bryson.

several degrees:  a bachelor's in sociology; a master's in sociology; and a doctorate in sociology, with a specialization in medical sociology and demography.  (ROI Ex. 17, at 7).[2] McKinnon worked as a statistician for the United States Bureau of the Census ("the Census Bureau") from 1997 to 2009 in several different capacities.[3]  Plaintiff avers that he voluntarily resigned from the Census Bureau on July 3, 2009, "after a year of having four different supervisors/coordinators." (ROI Ex. 7, McKinnon Decl. at 1).  Following his resignation, McKinnon applied to numerous federal job vacancies, two of which are at issue here.

### 1.   Vacancy 0053

On or about September 8, 2010, McKinnon applied to Announcement Number POP-2010-0053 for the position of "Statistician (Demography)" within the Census Bureau's Net International Migration Branch, Population Division ("Vacancy

---

[2] Citations to the "ROI" refer to the "Record of Investigation" compiled at the administrative level, which Defendant did not file electronically via CM/ECF but instead submitted in hard copy pursuant to Local Rule 105.1(b).

[3] From 1997 to 1998, McKinnon worked as a Survey Statistician in the Government Divisions – Criminal Justice Statistics Branch.  From 1998 to 2005, McKinnon served as a Statistician in the Racial Statistical Branch.  From 2005 until June 2008, McKinnon worked as an Assistant Supervisor for the Census Bureau's "Current Population Survey."  Finally, from June 2008 until July 3, 2009, McKinnon worked in the Census Bureau's Chicago office as a "Partnership Specialist."

0053"). Per the announcement for Vacancy 0053, the individual selected would be responsible for, *inter alia*, "research on estimating international migration to and from the United States." (ROI Ex. 13, at 1). The announcement stated that applicants who met basic eligibility requirements would be evaluated for referral to the selecting official based on three knowledge, skills, and abilities ("KSA's"): "(1) Knowledge of statistics, demography, sociology, statistical methodology and research methods; (2) Ability to present the Net International Migration Branch and the Census Bureau's position in a clear and professional manner; and (3) Ability to lead diverse teams in planning and executing analysis and research." (*Id.*).

The Census Bureau's human resources office referred twelve candidates for Vacancy 0053 – including Plaintiff – to Elizabeth Greico, the selecting official. (ROI Ex. 8, Greico Decl. at 2). Prior to conducting any interviews, Ms. Greico created a list of questions to be asked of all candidates and identified seven criteria as "being crucial to this job." (*Id.* at 4).[4]  Ms. Greico then created a spreadsheet that assigned a weight value

---

[4]   The seven criteria were: (1) demographic experience/training; (2) survey methodology experience/training; (3) good SAS programming skills and knowledge/experience with Excel; (4) knowledge about and experience with immigration statistics and research; (5) project management and/or team leadership training and experience; (6) familiarity with and experience using a broad range of census data; and (7) good communication skills. (ROI Ex. 8, Greico Decl. at 4).

to each of the seven criteria.  For example, the most important criterion – knowledge about and experience with immigration statistics and research – had a weight of 25, whereas the least important criterion – familiarity with and experience using a broad range of census data – had a weight of 5.  (*Id.*).

Ms. Greico and Alexa Jones-Putoff, another Census Bureau manager, conducted interviews of the twelve candidates either in person or by phone.  Plaintiff's interview took place *via* phone, and he answered all of the questions correctly.  (ROI Ex. 7, McKinnon Decl. at 2-3).  Afterwards, Ms. Greico consulted her notes to assign each candidate a score, ranging from 1 to 6, for each of the seven criteria.  The spreadsheet indicated that a score of 6 is "High," meaning "considerable training (*e.g.*, MA/MS, PhD) and experience (3+ years of related work at Census Bureau)" while a score of 1 is "Low," meaning "minimal training (*e.g.*[,] short training course) and experience (less than 1 year of related [work] at Census Bureau)".  (ROI Ex. 8, Greico Decl. at 4).  After multiplying each candidate's score for a given category by the category's weight, Ms. Greico arrived at a total point value for each of the twelve candidates and ranked them accordingly.  Eric Jensen – a man who was born in 1977 - ranked first among the twelve candidates in Ms. Greico's spreadsheet, receiving a total of 560 points, including a score of 6 in the

four categories assigned the highest weight values.  Plaintiff ranked eighth with a total of 315 points.

Ms. Jones-Putoff also used the spreadsheet created by Ms. Greico to rank the candidates.  (ROI Ex. 9, Jones-Putoff Decl. at 2).  Although Ms. Jones-Putoff was unable to locate her spreadsheet or any of her interview notes during the Equal Employment Opportunity ("EEO") investigation, she recalls that Mr. Jensen "had high scores in all categories, having good experience and education in all the listed criteria."  (*Id.*).  Ms. Jones-Putoff further avers that, although she does not recall the specific score she assigned to Plaintiff, she is "sure he was not in the top ranked group of individuals considered for this position." (*Id.*).

After discussing the candidates with Ms. Jones-Putoff and learning that she had also ranked Mr. Jensen as her top candidate, Ms. Greico selected Mr. Jensen for Vacancy 0053. According to Ms. Greico, Mr. Jensen was the "strongest candidate" based on his demographic training; his knowledge of and experience with using large data sets; his SAS programming skills; and his knowledge of immigration statistics and research.  (ROI Ex. 8, Greico Decl. at 3).  Based on his application for Vacancy 0053, Mr. Jensen holds a Ph.D. in rural sociology and demography and a master's degree in sociology. (ROI Ex. 17, at 24-25).  Mr. Jensen represented in his

application (*id.* at 17) and again his interview (ROI Ex. 18, at 2) that his master's thesis and doctoral dissertation involved the analysis of international migration data.  Mr. Jensen also indicated that he had worked in the Net International Migration Branch for one year, where his research "focuse[d] on estimates of net international migration." (ROI Ex. 17, at 20).

Plaintiff received notification that he had not been selected for Vacancy 0053 on March 3, 2011. (ROI Ex. 7, McKinnon Decl. at 3).  Ms. Greico represents that she previously worked with Plaintiff at the Census Bureau, but that experience had no bearing on her selection of Mr. Jensen for Vacancy 0053. (ROI Ex. 8, Greico Decl. at 3).

**2.  Vacancy 0007**

On or about November 10, 2010, McKinnon submitted an application for Announcement Number GOVS-2011-0007 for the position of "Survey Statistician" within the Census Bureau's Government Organization Branch, Governments Division ("Vacancy 0007").  The resume submitted by Plaintiff did not include his date of birth, but did state that he earned his undergraduate degree in 1985. (ROI Ex. 24, at 5).

Per the announcement for Vacancy 0007, the individual selected would be responsible for "leading the legal research effort for the quinquennial Census of Governments" and "conducting peer reviews for several Census of Governments

6

related surveys." (ROI Ex. 20, at 1). The selected candidate would also be responsible for maintaining the Governments Division's "Finance and Employment classification manual." (*Id.* at 2). The announcement also stated that those applicants who met certain minimum qualifications would be evaluated for referral to the selecting official based on five KSA's: (1) knowledge of Federal, state, and local legal structure with an emphasis on statutory law; (2) knowledge of "the nuances of the public sector"; (3) skill in "advanced data analysis concepts"; (4) knowledge of various edit processes; and (5) ability to communicate with customers. (*Id.* at 2).

Stephen Owens, the selecting official for Vacancy 0007, interviewed eight candidates over a two-day period. (ROI Ex. 10, Owens Decl. at 2). Three of the candidates were women, and five were men. (ROI Ex. 23, at 1). Mr. Owens avers that, because "time was of the essence," he did not develop any specific rating or ranking tools. (ROI Ex. 10, Owens Decl. at 2). He did create a list of eleven questions that he asked each candidate. (*Id.* at 7). Plaintiff's interview took place *via* phone, and he answered all interview questions correctly. (ROI Ex. 7, McKinnon Decl. at 3).

Mr. Owens conducted the interviews with two unnamed managers, one who participated in five interviews and another who participated in three interviews. (ROI Ex. 10, Owens Decl.

at 2).  Mr. Owens represents that, although no one took notes, they did discuss the substance of the interviews. (*Id.*).  After this first round of interviews, Mr. Owens narrowed the field to three candidates, each of whom was interviewed by his supervisor, Kimberly Moore.  Plaintiff was not one of these three candidates.  Mr. Owens avers that Plaintiff was "in the bottom third of those interviewed" and that Vacancy 0007 was "not a 'good fit'" for him based on his background. (*Id.*).

After consulting with Ms. Moore, Mr. Owens selected Elizabeth Accetta for Vacancy 0007.  Ms. Accetta is a woman who was born in 1981. (ROI Ex. 23, at 1).  Mr. Owens avers that Ms. Accetta had "the level of technical knowledge and expertise I was searching for in a selectee, along with experience in government finance." (ROI Ex. 10, Owens Decl. at 2).  Mr. Owens further states that Ms. Accetta "asked great questions about the job, showing she had a good grasp of and passion for the work required for this position." (*Id.*).

In her application for Vacancy 0007, Ms. Accetta represented that she has a master's degree in policy research and analysis, as well as a bachelor's degree in economics. (ROI Ex. 24, at 28).  In response to Question 16 about whether she had any experience with "the development of state, county, or school district level estimates by characteristics," Ms. Accetta responded "yes" and indicated she had had contributed to a

number of surveys involving state and local government entities
during her time at the Census Bureau. (*Id.* at 22-25). In
Plaintiff's application, he answered "no" to Question 16. (*Id.*
at 3). In response to Question 18 about whether she had
completed certain activities related to "economic statistical
data," Ms. Accetta indicated that she had completed four such
activities. (*Id.* at 23). Plaintiff, by contrast, answered
"none of the above" to Question 18. (*Id.* at 3).

Plaintiff received notification that he had not been
selected for Vacancy 0007 on April 19, 2011. (ROI Ex. 7,
McKinnon Decl. at 3).

### B.   Procedural Background

Plaintiff initiated contact with the Census Bureau's EEO
office on March 29, 2011. (ROI Ex. 4, at 1). On or about May
6, 2011, Plaintiff filed a formal EEO charge, alleging that the
Census Bureau discriminated against him based on his sex (male)
and age (over 40 years old) by subjecting him to a hostile work
environment; by not selecting him for six different vacancies
within the Census Bureau; and by providing negative references
to prospective employers. (ROI Ex. 1). On June 13, 2011, the
Census Bureau's Office for Civil Rights ("OCR") issued a notice

in which it accepted Plaintiff's failure-to-hire claims relating to Vacancy 0053 and Vacancy 0007 and rejected all other claims.[5]

During the course of its investigation, OCR collected sworn statements from Plaintiff, Ms. Greico, Ms. Putoff-Jones, and Mr. Owens.  (ROI Exs. 7-10).  OCR also compiled numerous documents relating to Vacancy 0053 and Vacancy 0007, including the vacancy announcements; a list of applicants who were referred to the selecting officials; the applications and resumes of Plaintiff and the ultimate selectees; and the selecting official's interview notes (as to Vacancy 0053 only).

On November 29, 2011, the Census Bureau sent Plaintiff a copy of the ROI and invited him to submit a rebuttal argument. According to the Census Bureau, McKinnon provided a response to the ROI and requested a final agency decision.[6]  On February 8, 2012, OCR issued a final agency decision.  According to Defendant, OCR concluded that the Census Bureau had not engaged in any unlawful discrimination.

---

[5] In a letter dated June 23, 2011, Plaintiff sought reinstatement of his dismissed claims and attempted to add claims for his non-selection to two other positions not mentioned in his original complaint. (ROI Ex. 4, at 32-33).  On June 29, OCR confirmed its prior decision and informed Plaintiff that it would investigate only his claims relating to Vacancy 0053 and Vacancy 0007. (*Id.* at 56-57).

[6] Although Defendant cites to McKinnon's response in its motion, the Census Bureau did not provide the court with a copy of McKinnon's response or the final agency decision.

On April 25, 2012, Plaintiff filed a complaint in this court. (ECF No. 1). Plaintiff alleges age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Before filing an answer or conducting any discovery, Defendant moved for summary judgment on all of Plaintiff's claims. (ECF No. 8). Plaintiff filed an opposition (ECF No. 11), and Defendant replied (ECF No. 15).

## II.  Standard of Review

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.

2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

Defendant contends that the undisputed facts establish that the Census Bureau did not engage in intentional discrimination based on age or sex when filling Vacancy 0053 or Vacancy 0007. (ECF No. 8, at 1-2).  Plaintiff responds by arguing that the Census Bureau's failure to hire him in favor of less qualified candidates was motivated by unlawful discrimination. (ECF No. 11, at 2).  Plaintiff alternatively argues that Defendant's motion is premature and that he must be permitted to conduct discovery. (*Id.*).  Neither of Plaintiff's attempts to defeat summary judgment is availing.

### A.  Based On The Present Record, Defendant Is Entitled To Judgment As A Matter Of Law On Plaintiff's ADEA And Title VII Claims.

In his complaint, Plaintiff alleges that the Census Bureau's failure to hire him constituted age discrimination (as

12

to Vacancy 0053 and Vacancy 0007) and sex discrimination (as to Vacancy 0007 alone). There are two methods for proving intentional discrimination in employment: (1) through direct evidence or (2) through circumstantial evidence under the three-step burden shifting scheme set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), and more recently affirmed in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Although *McDonnell Douglas* dealt only with Title VII claims, the framework is also applied to age discrimination claims arising under the ADEA. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*), *cert. dismissed*, 543 U.S. 1132 (2005).

Here, because he lacks any direct evidence of sex or age discrimination, Plaintiff must proceed under the burden-shifting framework established in *McDonnell Douglas*. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).[7]

---

[7] The Census Bureau also argues that Plaintiff cannot prevail on his ADEA claims because he cannot show that, but for his age, he would have been selected for Vacancy 0053 and Vacancy 0007. Ultimately, Plaintiff would have to make such a showing to prevail at trial. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). At the summary judgment stage, however, post-*Gross* decisions have continued to apply the *McDonnell Douglas* framework. *See, e.g., Thornton v. Baltimore City Bd. of Sch. Com'rs*, Civ. No. WMN-07-1555, 2009 WL 3767090, at *5 (D.Md. Nov. 9, 2009). Because Plaintiff cannot meet his

Under that framework, the plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. After doing so, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves*, 530 U.S. at 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, the presumption of discrimination raised by the plaintiff's *prima facie* case is rebutted. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n. 10). Then, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against him." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Defendant assumes, for purposes of its motion, that Plaintiff can establish a *prima face* case for failure-to-hire based on age discrimination (as to both vacancies) and sex

---

burden under *McDonnell Douglas*, there is no need to consider the higher standard of but-for causation.

discrimination (as to Vacancy 0007 only).[8]   In other words,
Defendant concedes that Plaintiff can establish:  (1) that he is
a member of a protected class; (2) that he applied for the
positions in question; (3) that he was qualified for those
positions; and (4) that he was rejected under circumstances
giving rise to an inference of unlawful discrimination.  *See*
*Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998).

Defendant maintains, however, that the Census Bureau had
legitimate, non-discriminatory reasons for selecting other
candidates:  namely, that the selected candidates were better
qualified for the positions than Plaintiff.  With respect to
Vacancy 0053, Defendant argues that Mr. Jensen was a superior
applicant because he performed better than Plaintiff during the
interview process and because he possessed superior experience
in certain crucial skills, including immigration statistics.
With respect to Vacancy 0007, Defendant represents that Ms.
Accetta was a superior applicant based on her interview
performance; her technical expertise; her experience with
government finance; and her record of good performance in the
Census Bureau's Governments Division.  Defendant's explanations

---

[8] In its motion for summary judgment, Defendant interprets
the complaint as asserting Title VII claims with respect to both
vacancies.  (ECF No. 8, at 11).  In his opposition, Plaintiff
clarifies that his sex discrimination claim applies only to
Vacancy 0007.  (ECF No. 11, at 14 n. 6).

constitute legitimate, non-discriminatory justifications for not selecting Plaintiff. *See, e.g.*, *Jarvis v. Astrue*, No. CCB 05-2950, 2007 WL 2332694, at *5 (D.Md. July 31, 2007) (in the non-selection context, an employer can meet its burden "with reference either to reasons for rejecting [the plaintiff] or choosing [the selected individual]").

Because Defendant has met its burden of production, the burden shifts backs to Plaintiff to show pretext. Plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that [Defendant's] proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. In the non-selection context, the Fourth Circuit has identified two avenues of indirect persuasion. *See Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 648, n. 4 (4th Cir. 2002); *Jarvis*, 2007 WL 2332694, at *5. First, a plaintiff can "show that her qualifications were so plainly superior that the employer could not have preferred another candidate." *Dennis*, 290 F.3d at 648, n. 4. In other words, the plaintiff must establish that the decision-maker could not have preferred the selectee "in the absence of some ulterior motive such as a discriminatory desire to deny the position to [the plaintiff]." *Herring v. Thompson*, No. AMD 01-3824, 2003 WL 23590541, at *7 (D.Md. May 12, 2003) (characterizing this standard as a "heavy burden"). Second, a

16

plaintiff can demonstrate that the totality of the circumstances establishes that the employer's proffered reason, although factually supported, "was not the actual reason relied on, but was rather a false description of its reasoning . . . manufactured after the fact." *Dennis*, 290 F.3d at 648.

Here, Plaintiff attempts to establish pretext through both avenues. First, Plaintiff contends that he was clearly the most qualified candidate for both Vacancy 0053 and Vacancy 0007. Second, Plaintiff asserts that Defendant's proffered explanations rely on missing documents, shifting rationales, and highly subjective criteria – all of which indicate that the Census Bureau is attempting to conceal discriminatory animus. Neither of Plaintiff's approaches is successful.

### 1.  Plainly Superior Approach

Plaintiff fails to satisfy the heavy burden of showing that his qualifications were plainly superior to the selected candidates for either position.  As to Vacancy 0053, Plaintiff argues that "a jury could readily find that Dr. McKinnon was far and away the best-qualified candidate for the job" because, in addition to a Ph.D., he had "more than a decade of experience working for the [Census Bureau]," whereas Mr. Jensen had worked at the Bureau for only a year and a half.  (ECF No. 11, at 17). This difference does not establish the "plain superiority" of Plaintiff's qualifications because Ms. Greico represents that

17

her decision was based on the *relevance* of the candidates' experience rather than the length thereof.   It is not this court's province to question what criteria an employer uses in its hiring decisions.   *See, e.g.*, *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 377 (4th Cir. 1995) (Title VII "is not a vehicle for substituting the judgment of a court for that of the employer").

Moreover, ample evidence supports the reasonableness of Ms. Greico's conclusion that Mr. Jensen was the best candidate based on his experience in the seven criteria deemed to be crucial for the job.   For example, both Mr. Jensen's application and Ms. Greico's interview notes indicate that Mr. Jensen had extensive experience in the area of immigration statistics and research – the most critical skill for the position – by virtue of his academic research and his professional experience in the Census Bureau's Net Immigration Division.   (*See* ROI Exs. 17 & 18). Although Plaintiff also had a background in this area, he represented in his application and interview that such experience consisted primarily of demography coursework at Georgetown University rather than any professional experience at the Census Bureau. (*See id.*).   Thus, although Plaintiff may be able to establish that he also was qualified for the position, he fails to demonstrate that Ms. Greico could not possibly have preferred Mr. Jensen over Plaintiff absent discriminatory animus.   *See Herring*, 2003 WL 23590541, at *7 (it is not enough

18

for a plaintiff to establish that he is equally qualified for a position where the evidence establishes that it was reasonable for the employer to conclude that the selectee "submitted the richest application for the position").

As to Vacancy 0007, Plaintiff contends that "a jury could easily find that Dr. McKinnon was plainly superior" to Ms. Accetta because (1) he had attained a higher level of education (*i.e.*, he has a Ph.D. whereas Ms. Accetta has only a master's degree); (2) he had twice as much experience at the Census Bureau as Ms. Accetta; and (3) three years of his work experience involved supervising surveys and censuses, whereas Ms. Accetta "had never served in a supervisory role." (ECF No. 11, at 19).  Here again, Plaintiff focuses on criteria that he subjectively believes should have been used rather than on the criteria that Mr. Owens actually relied upon to select among the qualified candidates.  Ms. Accetta's resume and application provide ample support for the reasonableness of Mr. Owens's conclusions that she was the best qualified candidate, particularly when compared to Plaintiff's application materials. For example, in responding to a question about experience in the development of state, county, or school district level estimates – experience directly relevant to Vacancy 0007 – Plaintiff indicated that he had no such experience, whereas Ms. Accetta provided a detailed explanation of her experience as a senior

analyst involved in two relevant surveys.  (*Compare* ROI Ex. 24, at 3 *with id.* at 23).  This is just one piece of evidence confirming that Mr. Owens could have reasonably preferred Ms. Accetta to Plaintiff absent any discriminatory motive.

In sum, Plaintiff fails to establish pretext through the "plainly superior" avenue of proof for either vacancy.

### 2.  Totality of the Circumstances Approach

Plaintiff separately attempts to establish pretext by arguing that the record evidence "provides ample reason to doubt the purportedly legitimate reasons for Defendant's decisions." (ECF No. 11, at 2).  First, Plaintiff contends that, because there is no evidence that the selecting officials relied on the candidates' applications in their decision-making process, Defendant's citation to Mr. Jensen's and Ms. Accetta's application materials in this litigation indicates pretext. (ECF No. 11, at 16).  Although it is true that a "the late appearance of [the employer's] current justification" can give rise to an inference of pretext, *see EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001), Plaintiff's argument ignores the manner in which Defendant uses the candidates' applications.  Rather than contradicting the initial explanations given by the selecting officials, Defendant uses the candidates' applications in its motion to corroborate the declarations that Ms. Greico and Mr. Owens submitted during the

EEO investigation.  In other words, a comparison of Plaintiff's application responses with those provided by the chosen candidates only serves to confirm the selecting officials' explanations as to why they chose other applicants.  This simply is not a case where pretext can be inferred because an employer changed its explanation for a personnel decision at a late stage in the litigation.  *Compare Sears Roebuck*, 243 F.3d at 853 (where employer initially told the EEO office that it did not hire plaintiff because there were "no hours were available" but then admitted in the civil case that this reason was "inaccurate," a reasonable fact-finder could infer pretext) *with EEOC v. Delta Chem. Corp.*, No. JFM 07-2572, 2008 WL 4833098, at *9 (D.Md. Nov. 3, 2008) (no basis for inferring pretext where the employer "has never added an entirely new rationale to its explanation" for a non-selection but instead has merely "elaborated on its initial explanation" by pointing to additional supporting evidence).

Specifically with respect to Vacancy 0053, Plaintiff also argues that Defendant's proffered explanations are far from "well-documented," citing Ms. Jones-Putoff's inability to produce her interview notes or her spreadsheet during the EEO investigation.  (ECF No. 11, at 16).  Occasionally, "[i]n borderline [discrimination] cases, an inference of spoliation, in combination with some (non insubstantial) evidence of the

plaintiff's cause of action, can allow the plaintiff to survive summary judgment." *Sarmiento v. Montclair State Univ.*, 285 F.App'x 905, at *5 (3[d] Cir. 2008); *accord Norman-Nunnery v. Madison Area Tech. Coll.*, 297 F.3d 606, 616 (7th Cir. 2010) ("An employer's destruction of or inability to produce a document, *standing alone*, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case.") (emphasis added) (internal quotation marks omitted).  This is not a borderline case, as Plaintiff "fail[s] to cast meaningful doubt on any of the core facts underlying the nondiscriminatory rationale proffered by [the Census Bureau]." *Sarmiento*, 285 F.App'x, at *5.  Accordingly, it would be "highly speculative" to infer that Ms. Jones-Putoff destroyed her notes or spreadsheet to cover up unlawful discrimination.  *Id*. Moreover, Plaintiff has not actually suggested that there has been any deliberate spoliation of evidence here.

With respect to Vacancy 0007, Plaintiff asserts that pretext can be inferred from "the complete absence of objective standards" used by Mr. Owens during the hiring process combined with the lack of any "contemporaneous documentation about the interview process."  (ECF No. 11, at 18-19).  Plaintiff supports this argument by citing to *Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496 (4th Cir. 1988), where the Fourth Circuit affirmed the trial court's finding of discrimination based on, *inter*

*alia*, evidence indicating that the employer had "considered only subjective criteria in making . . . promotion decisions." *Id.* at 1506.   Notably, however, the *Lilly* court also cited to the following evidence as supporting the lower court's finding of discrimination:   "[n]otices of job vacancies were not posted. Required   qualifications   for   open   positions   were   never communicated, and written guidelines not used." *Id.*

The hiring process used for Vacancy 0007 cannot be said to suffer from the same flaws.   The Census Bureau posted a detailed announcement for the vacancy that included both a summary of the position's responsibilities as well as the criteria that would be used in the initial screening of applicants.   Moreover, although Mr. Owens may not have carried out his evaluation of the interviewees according to any specific ranking system or spreadsheet, his decision to choose Ms. Accetta is not without explanation.   *See Delta Chem.*, 2008 WL 4833098, at *9 (distinguishing *Lilly* and similar cases because the employer's non-selection   decision   was   supported   by   "more   than   an unspecified gut feeling").   Rather, Mr. Owens explains his decision by referencing Ms. Accetta's passion for the position, as evidenced by the questions she posed during her interview, and her proven track record of performance in the Governments Division, based on his direct experience working with her. Finally, it also bears noting that Mr. Owens did not develop any

specific rating or ranking tools for the interview process because "time was of the essence" due to an "impending government shutdown." (ROI Ex. 10, Owens. Decl. at 4-5). Plaintiff does not suggest that this representation is false.

At bottom, Plaintiff utterly fails to present any evidence even hinting that the Census Bureau was motivated by discriminatory animus in choosing other candidates for Vacancy 0053 or Vacancy 0007. All that Plaintiff offers is his subjective belief that "employers are probably looking to hire younger people at lower starting wages than a seasoned person with a high degree of education . . . and a great deal of experience." (ROI Ex. 7, McKinnon Decl. at 2). Such a "bald assertion[]" is "insufficient to counter substantial evidence of [a] legitimate, non-discriminatory reason[] for an adverse employment action." *Nichols v. Comcast Cablevision of Md.*, 84 F.Supp.2d 642, 651 (D.Md. 2000). Thus, Defendant is clearly entitled to summary judgment based on the present record.

**B.   Plaintiff's Rule 56(d) Request Will Be Denied.**

Plaintiff alternatively contends that granting summary judgment would be premature at this time given the "thin" state of the record. (ECF No. 11, at 8-12). Defendant, in turn, argues that Plaintiff has no legitimate need for additional discovery because the ROI compiled during the EEO investigation contains all of the facts that are essential for his opposition.

24

(ECF No. 15, at 4-6).    Because the discovery requested by
Plaintiff would amount to a fishing expedition for evidence of
pretext, Plaintiff's Rule 56(d) request will be denied.

Generally, "summary judgment is appropriate only after
adequate time for discovery." *Evans*, 80 F.3d at 961.  To render
this general rule applicable, however, the nonmovant must
clearly demonstrate the need for discovery pursuant to Rule
56(d), which allows the court to deny summary judgment or delay
ruling on the motion until discovery has occurred if the
"nonmovant shows by affidavit or declaration that, for specified
reasons, it cannot present facts essential to justify its
opposition."  Fed.R.Civ.P. 56(d).[9]  Courts interpreting this rule
have consistently held that a Rule 56(d) request may be denied
if "the additional evidence sought for discovery would not have
by itself created a genuine issue of material fact sufficient to
defeat summary judgment."   *Ingle ex rel. Estate of Ingle v.
Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation
marks omitted).   In other words, a nonmovant must provide "a
reasonable basis to suggest that [the requested] discovery would
reveal triable issues of fact" in order for such a request to be
granted. *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010); *see*

---

[9]  The 2009 Amendments to the Federal Rules of Civil
Procedure transferred the language of former Rule 56(f) to Rule
56(d).

*also Richard v. Leavitt*, 235 F.App'x 167, 167 (4th Cir. 2007) (affirming the district court's denial of a Rule 56(d) request when the plaintiff failed to provide a basis for believing that the information sought actually existed).   Put simply, Rule 56(d) does not authorize "fishing expedition[s]."   *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md. 2002), *aff'd*, 50 F.App'x 179 (4th Cir. 2002); *see also Wright v. Eastman Kodak Co.*, 550 F.Supp.2d 371, 382 (W.D.N.Y. 2008) ("While a Rule 56[(d)] discovery request may be granted to allow a plaintiff to 'fill material evidentiary gaps,' it may not be premised solely on speculation as to evidence which *might* be discovered[.]"), *aff'd*, 328 F.App'x 738 (2[d] Cir. 2009).

As noted, Defendant moved for summary judgment prior to answering and before any discovery.   Thus, Defendant relies exclusively on the ROI to support its motion.   Plaintiff argues that the administrative record is insufficient because the OCR conducted only a "routine investigation" that did not involve a hearing or any depositions of key decision-makers, such that discovery is "necessary to develop Defendant's intent and the pretextual character of its actions."   (ECF No. 11, at 10-11). To that end, the Rule 56(d) affidavit submitted by Plaintiff's counsel seeks several forms of discovery.   (*See* ECF No. 11-1, Goldman Aff.).   First, Plaintiff contends that he is entitled to depose Ms. Greico, Ms. Jones-Putoff, Mr. Owens, and Ms. Moore in

order to explore, *inter alia*, how they applied the hiring standards for the two positions and their beliefs as to the ages of Plaintiff and the selectees.  Second, Plaintiff contends that he is entitled to "all of the notes, ranking sheets, and other documents prepared by the interviewers" and any documents "regarding the hiring process for both positions" that were not provided to the OCR.  Third, Plaintiff avers that he is entitled to seek the identities of the two individuals who joined Mr. Owens during interviews for Vacancy 0007 and to otherwise inquire about (1) the Census Bureau's hiring processes and procedures; (2) the other interviewees; and (3) any other information "regarding any unlawful motive or intent in selecting other candidates to fill the vacancies." (*Id.*).

Despite the apparent specificity of this affidavit, the crux of Plaintiff's argument is that he is entitled to discovery regarding every aspect of the selection decisions for Vacancy 0053 and Vacancy 0007 in the hope that he might locate some evidence probative of pretext.  In other words, Plaintiff contends that he "should be allowed to find out if [he] has a claim, rather than that [he] has a claim for which [he] needs . . . discovery." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2[d] Cir. 1994).

A thorough review of Plaintiff's opposition papers, his counsel's Rule 56(d) affidavit, and the ROI reveals no plausible

basis for believing that any evidence of unlawful discrimination would turn up during discovery.   The ROI provides a wealth of information regarding the non-selection decisions in question, including vacancy announcements; the candidates' application materials; interview questions; and sworn declarations from the selecting officials.   As discussed, nothing in these materials even hints of unlawful discrimination.   Although Plaintiff suggests that other documents about the hiring process might exist, he does not identify any specific documents that the Census Bureau did not produce during the EEO investigation (with the exception of Ms. Jones-Putoff's notes and spreadsheet, which were addressed above).   Likewise, Plaintiff's purported need for depositions amounts to a "purely speculative hope that the [selecting officials] will recant their sworn testimony and reveal a long-running and intricately-planned conspiracy" not to hire Plaintiff because of his age.   *Hamilton v. Geithner*, No. 1:08cv1112 (JCC), 2009 WL 2240358, at *2 (E.D.Va. July 23, 2009) (declining to reconsider denial of Rule 56(d) request where "a lengthy EEO investigation created an extensive record in which the recollections of witnesses were set down close in time to when the alleged discriminatory events occurred").

In sum, Plaintiff's request fails to identify any specific facts that were "not already available to him" by virtue of the ROI.   *Boyd v. Guiterrez*, 214 F.App'x 322, 232 (4th Cir. 2007)

(unpublished) (affirming district court's denial of a Rule 56(d) request where "numerous documents and affidavits submitted during [the plaintiff's] EEOC proceedings were already available to [him]").  Because permitting Plaintiff to engage in discovery in such circumstances would be akin to granting him a license to conduct a fishing expedition, his Rule 56(d) request will be denied.[10]

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Rebecca M. Blank will be granted.  A separate Order will follow.

_____
/s/
DEBORAH K. CHASANOW
United States District Judge

---

[10] The decision in _Chernova v. Electronic Systems Services, Inc._, 247 F.Supp.2d 720 (D.Md. 2003), which Plaintiff relies on, does not demand a different result.  There, a Title VII plaintiff requested discovery after the employer asked that its pre-answer motion to dismiss be converted into a motion for summary judgment.  _Id._ at 723.  Judge Motz granted the request for discovery, reasoning that the plaintiff made the request in good faith and had "not been lax in discovery because she ha[d] not yet had an opportunity to conduct any discovery."  _Id._ Notably, however, _Chernova_ did not mention whether there was an administrative record at all, let alone the extensiveness of any such record.  Therefore, _Chernova_ is not apposite.